IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

TIMOTHY HAMPTON,

      Appellant,

v.                                                                                  Case No. 5D15-2745

STATE OF FLORIDA,

      Appellee.

_____/

Opinion filed April 13, 2017

3.850 Appeal from the Circuit
Court for Seminole County,
Donna L. McIntosh, Judge.

Timothy Hampton, Perry, pro se.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Robin A. Compton,
Assistant Attorney General, Daytona
Beach, for Appellee.

EN BANC

EDWARDS, J.

      Timothy Hampton ("Appellant") appeals the denial of his Florida Rule of Criminal

Procedure 3.850 motion for postconviction relief regarding his pleas of no contest,

convictions, and sentences for several drug felonies, evidence tampering, and resisting

a law enforcement officer. Appellant set forth three separate grounds in his motion as

bases for his claims of ineffective assistance of counsel and involuntary pleas. The

postconviction court summarily denied Grounds One and Two. After an evidentiary hearing on Ground Three, the court denied Appellant's motion in its entirety. We affirm as to Grounds Two A and Three without further discussion. For the reasons discussed below, we reverse and remand for further proceedings as to Ground One and affirm as to Ground Two B.

GROUND ONE: FAILURE TO CHALLENGE WIRETAP ORDER

Appellant claims in Ground One that defense counsel was ineffective for failing to move to quash the order that authorized a wiretap based upon an allegedly insufficient probable cause affidavit. Appellant claims that a motion to quash the order would have been successful and would have weakened the State's case to such an extent that it would have resulted in either dismissal of all charges, acquittal, or lighter sentences. Appellant further claims that if the motion was filed and granted, he would not have pleaded no contest.

The postconviction court held that Appellant's no contest plea precluded postconviction attack on the admissibility of the evidence. However, a rule 3.850 motion alleging that "trial counsel provided ineffective assistance by failing to file a motion to suppress is a legally sufficient claim, which is not waived by an entry of a plea." *Spencer v. State*, 889 So. 2d 868, 870 (Fla. 2d DCA 2004) (citations omitted); *see also MacKinnon v. State*, 39 So. 3d 537, 538 (Fla. 5th DCA 2010). Thus, the postconviction court erred when it relied on legal insufficiency in summarily denying Appellant's first ground for relief. The record does not contain the motions to suppress or transcripts of the hearings resolving the motions; therefore, we cannot determine whether the motions addressed the propriety of the wiretap order. We reverse and remand with instructions for the

2

postconviction court either to attach records that conclusively refute Appellant's claims or to conduct an evidentiary hearing on Ground One.

GROUND TWO B:  INCOMPLETE INFORMATION ON CONSEQUENCES
OF HABITUALIZED OFFENDER SENTENCING

In Ground Two B, Appellant alleges that his plea was involuntary because he was not properly advised of the possible adverse consequences of being sentenced as a habitual felony offender ("HFO"), with regard to the opportunity for early release from prison.  The postconviction court noted that, during the sentencing proceedings, Appellant was not expressly advised about the possible effect of habitualization on early release eligibility.  The court determined, however, that Appellant received written notice of the State's intent to seek an HFO sentence enhancement, which advised that such a sentence "may cause the defendant to be ineligible for certain gain time or prison programs."  The court, therefore, summarily denied Ground Two B because Appellant did not demonstrate prejudice.

In *Ashley v. State*, 614 So. 2d 486 (Fla. 1993), the Florida Supreme Court held that before a defendant can be properly designated as a habitual offender after the entry of a guilty or no contest plea, "1) [t]he defendant must be given written notice of intent to habitualize, and 2) the court must confirm that the defendant is personally aware of the possibility and reasonable consequences of habitualization."  614 So. 2d at 490 (footnote omitted).  The second prong, "reasonable consequences of habitualization," includes informing a defendant of his or her eligibility for habitualization, the maximum HFO term, and the fact that habitualization may affect the possibility of early release.  *Id.* at 490 n.8. A defendant's claim that the trial court failed to inform him of the reasonable consequences of habitualization calls into question the voluntariness of the plea.  *State*

3

*v. Thompson*, 735 So. 2d 482, 484 (Fla. 1999). "[T]he issue of voluntariness may be raised in the trial court in a motion for postconviction relief if the issue has not been previously raised and ruled upon." *Id.* at 485.

In this case, during Appellant's plea colloquy, the trial court went through each count and advised Appellant of the maximum HFO enhanced sentence and related fines. The State's written notice of intent to seek an HFO sentence indicated that being sentenced as an HFO could make Appellant ineligible for certain gain time or prison programs. Appellant did not, however, receive any further explanation from his counsel or the court regarding the effect his habitualization would have on gain time, early release, or conditional release from prison.

Post-*Ashley* legislation raised questions about whether a discussion of gain time is still required in the plea colloquy for a defendant who may be sentenced as an HFO. The Florida legislature has eliminated automatic grants of gain time for crimes committed on or after January 1, 1994. *Barrs v. State*, 883 So. 2d 846, 846 (Fla. 1st DCA 2004). Therefore, the First, Third, and Fourth Districts concluded that a discussion of the impact of habitualization on gain time in the plea colloquy is no longer needed. *Smith v. State*, 126 So. 3d 397, 400 (Fla. 4th DCA 2013); *Barrs*, 883 So. 2d at 846; *Ferguson v. State*, 677 So. 2d 968, 968-69 (Fla. 3d DCA 1996). We agree with those courts that this legislation resulted in "the elimination of basic gain time for all offenders [and] nullified *Ashley's* requirement to advise offenders that habitualization may affect the possibility of early release." *Smith*, 126 So. 3d at 400 (citations omitted).[1]

---

[1] Habitual felony offenders, habitual violent felony offenders, and violent career criminals are now eligible for gain time under the sentencing provisions that apply to

Florida law requires that the defendant be made aware of the reasonable or direct consequences of habitualization prior to entering a plea. *Ashley*, 614 So. 2d at 490; *State v. Rodriguez*, 990 So. 2d 600, 603 (Fla. 3d DCA 2008). A "direct" consequence "represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Major v. State*, 814 So. 2d 424, 431 (Fla. 2002) (quoting *Zambuto v. State*, 413 So. 2d 461, 462 (Fla. 4th DCA 1982)). "Neither the trial court nor counsel is required to forewarn a defendant about every conceivable collateral consequence of a plea to criminal charges." *Simmons v. State*, 611 So. 2d 1250, 1252 (Fla. 2d DCA 1992). "Gain time, good time, provisional credit time, and additional mitigating credits are all collateral consequences of a guilty plea." *Rodriguez*, 990 So. 2d at 606. Thus, a plea is not rendered involuntary nor is ineffective assistance of counsel established when the defendant is not informed of every possible ramification or limitation concerning gain time or every possible reduction in time to be served. *Henderson v. State*, 626 So. 2d 310, 311 (Fla. 3d DCA 1993); *see also Cariveau v. Sec'y, Fla. Dep't. of Corr.*, No. 3:14-cv-542-J-32MCR, 2016 WL 6600955, at *5 (M.D. Fla. Nov. 8, 2016).[2]

---

habitualized offenders. *See* § 775.084(4)(k)1., Fla. Stat. (2011). Thus, incentivized gain time applies equally to offenders with HFO and non-HFO status.

[2] We are aware that HFO inmates who accrue incentivized gain time, upon release from prison, are placed on supervision subject to the conditional release requirements authorized by section 947.1405, Florida Statutes (2011), for the period of time equal to their accrued gain time. *Evans v. Singletary*, 737 So. 2d 505, 507 (Fla. 1999). Conditional release has been described as "an extra post-prison probation-type program." *Id.* We note that an HFO inmate is ineligible for control release, a program used to reduce prison populations in order to avoid overcrowding; however, no inmate has the right to be included in any controlled release pursuant to the relevant statute. *See* § 947.146(2), Fla. Stat. (2011). While not specifically mentioned by Appellant, both control release and conditional release fall into the category of collateral consequences of a plea.

Based on the foregoing, we sua sponte considered the matter en banc and now recede from *Williams v. State*, 2 So. 3d 1089 (Fla. 5th DCA 2009), and *Murphy v. State*, 952 So. 2d 1214 (Fla. 5th DCA 2007), to the extent that those decisions (1) required trial courts to include in plea colloquies an *Ashley*-based discussion of the possible impact habitualization could have on accrual of gain time, despite the legislative abolition of basic gain time; and (2) found that ineligibility for gain time or early release through certain programs is a direct consequence of a plea. We also certify conflict with the decisions of the Second District in *Parker v. State*, 808 So. 2d 264 (Fla. 2d DCA 2002), *Butler v. State*, 764 So. 2d 794, 795 (Fla. 2d DCA 2000), *Black v. State*, 698 So. 2d 1370, 1371 (Fla. 2d DCA 1997), and *Watson v. State*, 661 So. 2d 72, 72 (Fla. 2d DCA 1995).

We agree with the postconviction court that Appellant did not demonstrate how he was prejudiced by not receiving additional information about possible direct consequences of HFO enhancement before entering his plea, nor is there any readily apparent potential for prejudice to him under the facts of this case. Accordingly, we affirm Ground Two B.

AFFIRMED IN PART, REVERSED IN PART, REMANDED WITH INSTRUCTIONS; CONFLICT CERTIFIED.

COHEN, C.J., SAWAYA, PALMER, ORFINGER, TORPY, EVANDER, BERGER, WALLIS, and LAMBERT, JJ., concur.

6